Elise C. Ellis v. Commissioner. Crockett Ellis v. Commissioner.
Ellis v. Commissioner
Docket Nos. 43935, 43936.
United States Tax Court
1953 Tax Ct. Memo LEXIS 158; 12 T.C.M. (CCH) 889; T.C.M. (RIA) 53268; August 5, 1953
*158 W. D. Marshall, Esq., 733 Exchange Building, Memphis, Tenn., for the petitioners. A. Robert Doll, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined deficiencies in petitioners' 1945 income tax as follows: Elise C. Ellis
$2,553.69
Crockett Ellis
1,639.58
Respondent made adjustments to petitioners' net income for the year 1946, but these adjustments are not before the Court. The sole issue presented is whether the loss upon the 1947 sale of equipment and property used in petitioners' business is a part of the net operating loss so that the loss may be used as a carry-back deduction, and is not within the limitation of section 122 (d) (5) of the Code. Findings of Fact All of the facts are stipulated and are so found. The petitioners, mother and son, were residents of Memphis, Tennessee. Each petitioner filed individual income tax returns for the calendar years 1945 and 1947 with the collector of internal revenue for the district of Tennessee. During the years involved, petitioners were general partners in the Vulcan Iron Works; Elise C. Ellis had a 60 per cent share in the *159 net profits or losses, and Crockett Ellis had a 40 per cent share. The partnership was organized on November 29, 1939, and since then the business has manufactured metal products and parts to order. During the years 1943 through 1946, the partnership manufactured various products for the armed services and civilian war agencies. The partnership purchased machinery and equipment during the years 1942 through 1946 to meet the demands of an increased volume of business. However, this machinery and equipment was not acquired for any special work or contract. In 1945 the petitioners sold certain partnership machinery and equipment, and in 1946 they sold an automobile. The gain upon each sale was reported as a long-term capital gain pursuant to the provisions of section 117 (j) of the Code. The partnership sustained a loss from operations in 1947. In the same year petitioners sold partnership property and equipment at an aggregate loss of $5,894.96. The property and equipment were acquired during the years 1942 through 1947, and were primarily used in petitioners' trade or business. The items sold were depreciated for tax purposes up to the date of the sale. These items were not inventory, *160 stock in trade, nor were they held primarily for sale in the course of the partnership's trade or business. Petitioners filed income tax returns for the calendar year 1947, disclosing net losses. Included in the net loss reported by Elise C. Ellis was the amount of $3,536.98, which represented her proportionate share of the partnership's loss for the 1947 sale of the partnership property and equipment; Crockett Ellis likewise included the amount of $2,357.98, the balance of the 1947 loss from the sale of the partnership property and equipment. On or about April 1, 1948, petitioners filed an "Application for Tentative Carry-Back Adjustment", carrying the total reported net loss for the year 1947 back to the year 1945. This resulted in a refund of 1945 tax in the amount of $4,462.11 for Elise C. Ellis, and a refund of $1,971.84 for Crockett Ellis. In notices of deficiency dated June 11, 1952, respondent, inter alia, adjusted the net operating loss deduction of each petitioner for the taxable year 1945 by reducing their reported net operating losses for the year 1947 by the amount of each petitioner's proportionate share of the loss on the sale of the property and equipment. *161 In computing each petitioner's net operating loss for the year 1947, and, consequently, each petitioner's net operating loss deduction for the taxable year 1945, each petitioner's proportionate share of the loss sustained by the Vulcan Iron Works partnership in 1947 upon the sale of property and equipment is limited pursuant to the provisions of section 122 (d) (5) of the Code. Opinion In support of their contention, petitioners maintain that the loss sustained by the partnership upon the sale of certain property and equipment in 1947 was "attributable to the operation of a trade or business regularly carried on by" petitioners, and is not within the limitation of section 122 (d) (5) of the Code. [1] Further, they contend that their proportionate share of the losses were correctly included in the computation of their net operating loss for the year 1947, and that the loss should be carried back as a net operating loss deduction to the year 1945. Respondent, in his deficiency notices, has disallowed these deductions. *162 The parties have stipulated that: "The machinery and equipment, the shed, and office equipment sold by the partnership in 1947 were properties used primarily in petitioners' trade or business and were depreciated during the years involved * * *. Said properties were not inventory, stock in trade, or properties held primarily for sale in the course of trade or business." The issue is a question of whether the loss sustained in 1947 on the sale of equipment and property used in the partnership manufacturing business is a part of its net operating loss, and is not within the limitation of section 122 (d) (5), so that the partners may utilize the loss as a carryback deduction for 1945. Since petitioners were not engaged in the business of buying and selling metal manufacturing equipment, the loss from the sale of the property and equipment was not a loss "attributable to the operation of a trade or business regularly carried on by the taxpayer". Therefore the loss is not a net operating loss, and the limitation of section 122 (d) (5) is applicable. In sustaining respondent, we are following a well established rule: the loss upon the sale of property used in an individual's business *163 may not be incorporated into and become a part of the statutory net operating loss. Joseph Sic, 10 T.C. 1096, affd. 177 Fed. (2d) 469; Hartwig N. Baruch, 11 T.C. 96, affd. 178 Fed. (2d) 402; Puente v. Commissioner, 199 Fed. (2d) 940, affirming memorandum opinion of this Court [10 TCM 735,]; Joe B. Luton, 18 T.C. 1153. On brief petitioners admit "that some of the decided cases have reached what appears to be, and is, in some cases, a result contrary to the petitioners' position." Nevertheless, they ask us to expand the interpretation given to section 122 (d) (5). In the face of the authorities and the undisputed facts, we are not at liberty to overrule a doctrine so well established. Petitioners cite no authority to sustain their position, and their argument as to the legislative intent is not persuasive. The determination of respondent must be sustained. Decisions will be entered for the respondent. Footnotes
1. SEC. 122. NET OPERATING LOSS DEDUCTION. (a) Definition of Net Operating Loss. - As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d). * * *
(d) Exceptions, Additions, and Limitations. - The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows: * * *
(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *↩